UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DONALD M. WANLAND, JR.,<br><br>Defendant. | No. 2:13-cv-2343-KJM-KJN PS<br><br>AMENDED FINDINGS AND RECOMMENDATIONS |

<u>INTRODUCTION</u>

Presently pending before the court is the United States' renewed motion for summary judgment. (ECF No. 76.) Defendant Donald M. Wanland, Jr., who proceeds without counsel, has opposed the motion, and the United States filed a reply brief. (ECF Nos. 83, 84.)[1] After carefully considering the parties' written briefing, the court's record, and the applicable law, the court recommends that the United States' motion be GRANTED.[2]

////

---

[1] This action was referred to the undersigned pursuant to Local Rule 302(c)(21), because defendant, who is legally trained and a former member of the bar of this court, is no longer eligible to practice law and represents himself in this case.

[2] The motion was submitted for decision without oral argument on the record and written briefing pursuant to Local Rule 230(g).

BACKGROUND

On September 26, 2013, defendant, a now-suspended California attorney, was convicted by a jury of 28 criminal counts, including attempt to evade and defeat the payment of tax (1 count); the removal, deposit, and concealment of property subject to levy (24 counts); and willful failure to file income tax returns (3 counts). Defendant was subsequently sentenced to a term of imprisonment on March 25, 2014; the judgment in the criminal case was entered on March 28, 2014; and defendant filed a notice of appeal on April 7, 2014. Thereafter, on July 27, 2016, the Ninth Circuit Court of Appeals affirmed the judgment in all respects. See United States of America v. Donald M. Wanland, Jr., 2:09-cr-8-LKK, ECF Nos. 263, 266, 301-03, 335-37.[3]

The United States commenced the instant civil action on November 13, 2013, seeking a determination that, pursuant to 11 U.S.C. § 523(a)(1)(C), assessments for defendant's federal tax liabilities for certain tax years were not discharged in bankruptcy, as well as seeking to reduce such tax assessments to judgment. (See generally Complaint, ECF No. 1 ["Compl."].) The United States essentially alleges that defendant was assessed as owing taxes in excess of $1 million for the tax years of 1996, 1997, 1998, 2000, 2001, 2002, and 2003; that he was aware of his duty to pay such taxes; but that he "willfully attempted to evade or defeat payment of his federal tax liabilities" and "voluntarily, consciously, and intentionally concealed his assets from, and/or placed his assets out of the reach of, the United States." (Compl. ¶¶ 6, 11-17.) According to the United States, defendant operated a successful law practice and lived an extravagant lifestyle with luxury cars and large expenditures on hotels and resorts, but nonetheless refused to sell his assets to satisfy tax liabilities, failed to honor IRS levies issued to his law firm and another of his partnerships, paid other creditors instead of the United States, used nominee bank accounts in the name of a partnership for personal banking, and concealed nominee accounts from his accountants and the IRS when submitting sworn Collection Information Statements. (Compl. ¶¶ 14-17.)

---

[3] A court may take judicial notice of the existence of court filings and other matters of public record, which are not subject to reasonable dispute. Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006); Fed. R. Evid. 201(b).

Defendant denies all liability for the United States' claims in this action, asserting, *inter alia*, that any tax liabilities were discharged in bankruptcy. (ECF No. 28.)

LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides that "[a] party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought." It further provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[4] A shifting burden of proof governs motions for summary judgment under Rule 56. Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376, 387 (9th Cir. 2010). Under summary judgment practice, the moving party:

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P. 56(c)). "Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." In re Oracle Corp. Sec. Litig., 627 F.3d at 387 (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 advisory committee's notes to 2010 amendments (recognizing that "a party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact").

If the moving party meets its initial responsibility, the opposing party must establish that a genuine dispute as to any material fact actually exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-86 (1986). To overcome summary judgment, the opposing party must demonstrate the existence of a factual dispute that is both material, i.e., it affects the

---

[4] Federal Rule of Civil Procedure 56 was revised and rearranged effective December 10, 2010. However, as stated in the Advisory Committee Notes to the 2010 Amendments to Rule 56, "[t]he standard for granting summary judgment remains unchanged."

outcome of the claim under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc., 618 F.3d 1025, 1031 (9th Cir. 2010), and genuine, i.e., "'the evidence is such that a reasonable jury could return a verdict for the nonmoving party,'" FreecycleSunnyvale v. Freecycle Network, 626 F.3d 509, 514 (9th Cir. 2010) (quoting Anderson, 477 U.S. at 248). A party opposing summary judgment must support the assertion that a genuine dispute of material fact exists by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."[5] Fed. R. Civ. P. 56(c)(1)(A)-(B). However, the opposing party "must show more than the mere existence of a scintilla of evidence." In re Oracle Corp. Sec. Litig., 627 F.3d at 387 (citing Anderson, 477 U.S. at 252).

In resolving a motion for summary judgment, the evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. Moreover, all reasonable inferences that may be drawn from the facts placed before the court must be viewed in a light most favorable to the opposing party. See Matsushita, 475 U.S. at 587; Walls v. Cent. Contra Costa Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011). However, to demonstrate a genuine factual dispute, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts...Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586-87 (citation omitted).

DISCUSSION

The United States seeks summary judgment as to all claims in this action. Before turning to the merits of the United States' claims, the court first addresses certain preliminary arguments

---

[5] "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). Moreover, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).

4

raised by defendant.

Request for Stay of the Action

Defendant once again requests that the action be stayed (1) pending the outcome of his criminal appeal; and (2) to allow for additional discovery to be completed.

In a previous order issued back in 2014, the court carefully reviewed the applicable law concerning a stay of civil proceedings in light of ongoing criminal proceedings, and denied defendant's request to stay this action. (ECF Nos. 22, 27.) In his present request, defendant merely recycles the same arguments that he previously made and were rejected in the court's prior order. Moreover, since the issuance of that order, a Ninth Circuit panel on July 27, 2016, affirmed the judgment in defendant's criminal case in all respects. Furthermore, defendant's petitions for panel rehearing and rehearing *en banc* were also denied on October 14, 2016, and the Ninth Circuit's mandate in the criminal case issued on October 25, 2016. As such, defendant's criminal case provides no basis for staying this civil action.

Defendant's argument that the case should be stayed to allow him to conduct further discovery also lacks merit. Even though the United States' former counsel, Gerald Role, unquestionably failed to adhere to his discovery obligations, the United States has already been adequately sanctioned. Furthermore, as the court previously explained, defendant was ultimately not prejudiced by the United States' discovery misconduct, and defendant himself was dilatory in conducting his discovery during a unilaterally extended discovery period and in bringing any discovery issues before the court. (See ECF Nos. 68, 75, 87.) The court's reasoning was outlined in detail in the cited prior orders and is incorporated here by reference. No further discovery sanctions are warranted, discovery is long closed, and no extension of discovery is warranted.

Jurisdictional Issues

As an initial matter, defendant contends that the court lacks jurisdiction over this action, because it was not properly authorized. That argument is devoid of any merit. Official letters attached to the December 18, 2015 Declaration of W. Carl Hankla (present counsel for the United States) demonstrate that the action was authorized by appropriate delegates of the Secretary of the Treasury and the Attorney General of the United States. (See ECF No. 67, Exs. 1, 2); see also 26

U.S.C. §§ 7401, 7402; <u>Palmer v. United States Internal Revenue Service</u>, 116 F.3d 1309, 1311 (9th Cir. 1997) ("The government has produced redacted copies of two letters, which taken together, show that the government complied with these statutory requirements.").

Defendant next argues that the discharge injunction in defendant's previous bankruptcy case deprives this court of jurisdiction. That argument is just another version of defendant's res judicata argument, which this court has already twice rejected.

Over two years ago, in the context of defendant's motion to dismiss the action pursuant to Federal Rule of Civil Procedure 12(b)(6), the court rejected defendant's argument that the complaint is barred by the doctrine of res judicata. (ECF Nos. 22, 27.) The court explained that:

> Defendant essentially reasons that his June 8, 2011 bankruptcy discharge included the tax liabilities at issue in this action, and that the United States is therefore collaterally estopped from raising the issue of whether or not the taxes were dischargeable in this action. That argument lacks merit, because a discharge under 11 U.S.C. § 727 "does not discharge an individual debtor from any debt—for a tax…with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax…." 11 U.S.C. § 523(a)(1)(C).

(ECF No. 22 at 6.) The court further observed that, "although the Ninth Circuit has apparently not squarely addressed the issue, other courts have persuasively held, based on an analysis of the applicable statutes and bankruptcy rules, that the United States is not required to obtain a ruling on the non-dischargeability of a tax debt pursuant to section 523(a)(1)(C) in the underlying bankruptcy case to prevent its discharge." (<u>Id.</u>)

> Debts listed in §§ 523(a)(2), (a)(4) and (a)(6) are automatically discharged in bankruptcy unless a creditor objects to their dischargeability by filing an adversary proceeding. Fed. R. Bankr. P. 4007 (advisory committee notes). A creditor who wishes to object to the dischargeability of a debt under §§ 523(a)(2), (a)(4) or (a)(6) must file a complaint within sixty (60) days of the first scheduled meeting of creditors. Fed. R. Bankr. P. 4007(c)…Those debts excluded from discharge not listed in §§ 523(a)(2), (a)(4) or (a)(6), including certain tax debts, are automatically excepted from discharge…As a result, a complaint to determine the dischargeability of a debt, other than a debt listed in §§ 523(a)(2), (a)(4) or (a)(6), may be filed at any time. Fed. R. Bankr. P. 4007(b).

(ECF No. 22 at 6 [quoting <u>In re Walls</u>, 496 B.R. 818, 825-26 (N.D. Miss. 2013) (citation omitted)]); <u>see also</u> <u>In re Range</u>, 48 Fed. App'x 103, at *5 & n.2 (5th Cir. 2002) (unpublished).

This court noted that:

> [T]he operative complaint alleges sufficient facts to permit the court to draw a reasonable inference that defendant willfully attempted to evade or defeat payment of the tax liabilities at issue. Accepting such factual allegations as true for purposes of a motion to dismiss under Rule 12(b)(6), it follows that these taxes would not have been automatically discharged upon issuance of the discharge under 11 U.S.C. § 727. Defendant does not contend that the bankruptcy court actually made any specific findings regarding the dischargeability of these tax liabilities as part of an adversary proceeding in the bankruptcy action. As such, at least based on the present record in the context of defendant's motion to dismiss, the doctrines of collateral estoppel and res judicata do not bar the United States' present action.

(ECF No. 22 at 7.)

Subsequently, in his May 17, 2016 "motion for summary judgment, motion for judgment, and motion to dismiss complaint," which the court liberally construed as a motion for reconsideration, defendant sought reconsideration of the court's prior determination that this action was not barred by res judicata. (ECF No. 78.) In an August 9, 2016 order, the court denied reconsideration, reasoning as follows:

> Because the court's [previous holding] was in the context of a Rule 12(b)(6) motion to dismiss, and the well-pled factual allegations in the United States' complaint were accepted as true for purposes of that motion, defendant correctly notes that he could, at least conceivably, raise the issue of res judicata again. However, defendant does not present any new facts, evidence, or circumstances suggesting that the court's prior conclusion should be reconsidered. If anything, since the issuance of the court's prior order denying defendant's Rule 12(b)(6) motion to dismiss, the Ninth Circuit Court of Appeals recently, on July 27, 2016, affirmed defendant's jury convictions and sentence for criminal charges related to the tax liabilities at issue in this civil case, including tax evasion, concealment of property subject to a levy, and willful failure to file a tax return. (See ECF No. 86-1.)
>
> Defendant's sole contention appears to be that the court applied the incorrect law. The court respectfully disagrees. The cases cited by defendant discuss the overarching principles and contours of res judicata, including the uncontroversial proposition that the judgment of a bankruptcy court can, under the proper circumstances, constitute a final judgment on the merits that may bar future litigation of certain claims or issues. The court takes no issue with those cases. However, none of defendant's cases specifically address the effect of 11 U.S.C. § 523(a)(1)(C). By contrast, the plain language of 11 U.S.C. § 523(a)(1)(C), as well as the persuasive authorities of In re Walls and In re Range, discussed above, indicate that tax debts "with respect to which the debtor

> made a fraudulent return or willfully attempted in any manner to evade or defeat such tax" are automatically excepted from discharge, and that the United States is not required to affirmatively seek a ruling on the non-dischargeability of such a debt in the bankruptcy case to prevent its discharge. See In re Range, 48 Fed. App'x 103, at *7 n.2. (5th Cir. 2002) (noting that "debts excepted under § 523(a)(1)(C) are excepted automatically and a creditor's failure to file a proof of claim *or object to the discharge* does not affect the dischargeability or non-dischargeability of the debt.") (emphasis added). As such, the 2011 bankruptcy discharge was simply not a final judgment on the merits with respect to the dischargeability of defendant's tax debts at issue here.

(ECF No. 87.)

Moreover, as the court also noted in its August 9, 2016 order, any serious concerns about reliance on the above-mentioned persuasive authorities outside the Ninth Circuit were dispelled by the Ninth Circuit's recent opinion affirming the convictions and sentence in defendant's criminal case. In that opinion, the Ninth Circuit specifically observed as follows:

> We also doubt that there has been a final judgment on the merits with respect to Wanland's tax debts. Wanland received a general discharge under 11 U.S.C. § 727. Under a general discharge order, most debts are automatically discharged. There are a few exceptions, though, including for a tax "with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat." *Id.* § 523(a)(1)(C). In accordance with the statutory exceptions to discharge, Wanland was warned in his discharge order that some types of debt are *not* discharged, including "debts for most taxes." Even if, as Wanland points out, the intent requirements for demonstrating "willful tax evasion" for nondischargeability of debt and willful tax evasion for a criminal tax evasion charge are the same, *Hawkins v. Franchise Tax Bd. of Cal.*, 769 F.3d 662, 669 (9th Cir. 2014), the issue had likely not been adjudicated prior to the jury verdict in this trial.

(See ECF No. 86-1 at 21 n.4.) Even assuming, without deciding, that the above-cited footnote constitutes dicta, this court is disinclined to ignore such a clear signal from the Ninth Circuit, especially when that signal is entirely consistent with this court's prior holding.

Therefore, the court again finds that this action is not barred by res judicata, nor does the discharge injunction in defendant's previous bankruptcy case deprive this court of jurisdiction.

Finally, to the extent that defendant argues that this action is barred by the doctrine of laches, that argument cannot succeed in light of Ninth Circuit precedent holding that "laches is not a defense to the United States' enforcement of tax claims." Dial v. Comm'r Internal Revenue

8

Serv., 968 F.2d 898, 904 (9th Cir. 1992).[6]

### Alleged Improper Briefing by the United States

Defendant also contends that the United States' present motion for summary judgment should be denied, because it improperly incorporates by reference several of the United States' prior filings, including filings associated with previously-filed cross-motions for summary judgment. However, defendant's argument ignores the procedural history of this case. On December 24, 2015, in light of the discovery misconduct of the United States' former counsel, the court granted defendant a unilateral extension of the discovery period and denied the then-pending cross-motions for summary judgment without prejudice. (ECF No. 68.) Upon conclusion of the unilateral extended discovery period, the United States merely renewed its previous motion for summary judgment, largely incorporating by reference, and relying on, its previous briefing and supporting declarations. (See ECF No. 76.) Defendant does not make any colorable showing as to how he was materially prejudiced thereby.

Finally, defendant's remaining arguments as to purported briefing irregularities are so trivial as to not warrant further discussion, let alone the harsh sanction of outright denial of the pending motion.

### Substantive Claims

Having addressed the above preliminary issues, the court now proceeds to consider the United States' substantive claims.

*Claim One: Seeking A Determination That Assessments For Defendant's Federal Tax Liabilities Were Not Discharged In Bankruptcy*

As discussed above, whether or not defendant's federal tax liabilities were discharged in

---

[6] In his opposition brief, defendant does not specifically argue that this action was brought in violation of the statute of limitations. Nevertheless, even if he did, that argument is unpersuasive. A collection action must generally be brought "within 10 years after assessment of the tax." 26 U.S.C. § 6502(a)(1). However, the running of the limitation period is suspended during the period that a taxpayer is in bankruptcy, plus six months afterwards. 26 U.S.C. § 6503(h). Taking account of suspensions of the limitation period during defendant's bankruptcies, the calculations outlined in the United States' motion for summary judgment demonstrate that this action is timely with respect to all tax periods at issue here. (See ECF No. 55 at 7-8.)

bankruptcy hinges on the question of whether a particular exception to the general discharge applies; more specifically, whether the liabilities at issue are taxes "with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax[es]." 11 U.S.C. § 523(a)(1)(C).

The United States contends that the exception clearly applies to defendant's tax liabilities at issue in light of defendant's criminal conviction and by operation of the doctrine of offensive collateral estoppel. "Offensive use of collateral estoppel occurs when the plaintiff seeks to foreclose the defendant from litigating an issue the defendant has previously litigated unsuccessfully in an action with another party. Offensive collateral estoppel may be used when: (1) there was a full and fair opportunity to litigate the issue in the previous action; (2) the issue was actually litigated in that action; (3) the issue was lost as a result of a final judgment in that action; and (4) the person against whom collateral estoppel is asserted in the present action was a party or in privity with a party in the previous action." Pena v. Gardner, 976 F.2d 469, 472 (9th Cir. 1992) (internal citations and punctuation omitted).

As an initial matter, defendant argues that the United States cannot use the doctrine of offensive collateral estoppel to support its motion, because it did not plead it as a claim in its complaint. However, defendant cites no legal authority in support of his position that pleading of such a claim was required. In fact, according to the United States' briefing, the few courts to have considered the issue actually reached the opposite conclusion, reasoning that the Federal Rules of Civil Procedure only require a party to affirmatively plead collateral estoppel in an answer if it is to be used as an affirmative defense. See In re Fitch, 349 B.R. 133, 140-41 (Bankr. N.D. Tex. 2006); United States v. United Air Lines, Inc., 216 F. Supp. 709, 718 (E.D. Wash. 1962). Moreover, defendant, who is legally trained, can hardly claim to be unfairly surprised by the United States' use of the doctrine here. As part of the United States' first claim regarding nondischargeability of the tax debts, the United States specifically alleged and outlined the counts of defendant's criminal conviction. (ECF No. 1, ¶ 18.) Furthermore, both the United States' initial motion for summary judgment, filed on November 3, 2015, and the renewed motion for summary judgment, filed on May 2, 2016 (ECF Nos. 55, 76), expressly invoke the doctrine of

offensive collateral estoppel, and defendant has had an adequate opportunity to respond. Therefore, the court proceeds to consider whether the doctrine applies.

Count one of the superseding indictment in defendant's criminal case stated, in relevant part, that defendant:

> from on or about October 15, 2001, and continuing until at least December 15, 2006, did willfully attempt to evade and defeat the payment of a large part of the income tax due and owing by him and his spouse to the United States of America for the calendar years 2000 through 2003, in the approximate amount of $448,289 plus penalties and interest, by concealing and attempting to conceal from the Internal Revenue Service the nature and extent of his assets and the location thereof; by making a false statement to at least one agent of the Internal Revenue Service material to his income and ability to pay his tax liability; by placing funds and property in the name of at least one nominee; by defying at least one tax levy; and by paying other creditors instead of the United States, all in violation of Title 26, United States Code, Section 7201 and Title 18, United States Code, Section 2.

(ECF No. 57-16.) A jury ultimately found defendant guilty of nearly all of the specific counts in the superseding indictment, including count one for tax evasion. (ECF No. 57-17.) Based on that conviction, offensive collateral estoppel plainly applies to the 2000-2003 tax years.

The issue of whether defendant willfully attempted in any manner to evade or defeat the 2000-2003 taxes was actually litigated in the prior criminal case. The plain language of the criminal statute for tax evasion pursuant to which defendant was convicted, 26 U.S.C. § 7201, and the bankruptcy discharge exception, 11 U.S.C. § 523(a)(1)(C), is virtually identical. Compare 26 U.S.C. § 7201 (referring to any person who "willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof") with 11 U.S.C. § 523(a)(1)C) (referring to taxes with respect to which the debtor "willfully attempted in any manner to evade or defeat such tax"); see also Hawkins v. Franchise Tax Bd. of California, 769 F.3d 662, 668 (9th Cir. 2014) (noting that the language of 26 U.S.C. § 7201 and 11 U.S.C. § 523(a)(1)(C) is "almost identical"). Furthermore, several courts have found that a taxpayer who was convicted of criminal tax evasion was collaterally estopped from later denying nondischargeability of such taxes. See In re Grothues, 226 F.3d 334, 338-39 (5th Cir. 2000); In re Simone, 252 B.R. 302, 306-07 (Bankr. E.D. Pa. 2000); In re Goff, 180 B.R. 193, 198-200

(Bankr. W.D. Tenn. 1995). Additionally, even though it appears that the Ninth Circuit has not yet squarely addressed the issue, it has suggested likely agreement with the above-cited authorities. See <u>Hawkins</u>, 769 F.3d at 667-68 (discussing various acts constituting willful attempts to evade or defeat tax under 11 U.S.C. § 523(a)(1)(C), including transfers to false bank accounts and shielding of assets, and concluding that "[w]ith the exception of the mere failure to file a return, these same acts satisfy the conduct requirement for criminal tax evasion in this Circuit.")

Also, there is no question that defendant was a party to the prior criminal action and was convicted of criminal tax evasion. As noted above, defendant's criminal conviction was also ultimately affirmed by the Ninth Circuit, and his petitions for panel rehearing and *en banc* review were denied. Finally, there can be no genuine dispute that defendant had a full and fair opportunity to litigate the issue of willful tax evasion in his criminal case. Although defendant's opposition attempts to point to various procedural and other differences between criminal and civil litigation, the fact remains that defendant was represented in the criminal case by competent counsel, who vigorously defended defendant's interests at trial and on appeal before the Ninth Circuit, including in petitions for panel rehearing and rehearing *en banc*. Moreover, a higher burden of proof (proof beyond a reasonable doubt) applied in the criminal case.

Consequently, the court finds that offensive collateral estoppel precludes defendant from now disputing the nondischargeability of his 2000-2003 tax liabilities.

The issue of whether offensive collateral estoppel applies to defendant's 1996-1998 tax liabilities is a closer question, because the criminal charge for tax evasion in count one of the superseding indictment, on its face, only appears to have charged defendant with respect to his 2000-2003 tax liabilities. However, as the United States has shown, the IRS was actually attempting to collect all of defendant's tax liabilities simultaneously by virtue of an April 14, 2005 Notice of Levy, which pertained to defendant's tax liabilities for 1996-1998 and 2000-2003. (See ECF No. 67-1, Ex. 18.) That levy was the same levy that defendant was charged and convicted with defying in the tax evasion charge, as well as the vast majority of the removal, deposit, and concealment of property subject to levy charges in the superseding indictment. (ECF No. 57, Exs. Q, R.) Because the jury found that defendant had defied that levy, and the levy

covered 1996-1998 and 2000-2003, the court is persuaded that offensive collateral estoppel also applies to defendant's 1996-1998 tax liabilities.

In light of that conclusion, it is unnecessary to consider any other evidence offered by the United States in support of its motion for summary judgment, nor can defendant's declaration at ECF No. 99 be used to defeat summary judgment. Indeed, that declaration reveals that, even if he could, defendant is not attempting to raise any factual issue specific to the 1996-1998 tax years; he is again claiming, as he did in the criminal case, that he did not actually defy the tax levy with respect to any tax period. That contention is plainly foreclosed by his criminal convictions.

Accordingly, the court finds that, pursuant to 11 U.S.C. § 523(a)(1)(C), defendant's 1996-1998 and 2000-2003 tax liabilities were not discharged in bankruptcy, and that the United States is entitled to summary judgment with respect to its first claim.[7]

*Claim Two: Seeking To Reduce The Tax Assessments To Judgment*

In support of the judgment amount sought, the United States has submitted: (1) Forms 4340 (Certificates of Assessments and Payments) for the tax years at issue (attached to a declaration of the United States' former counsel, Gerald Role), ECF Nos. 57-1, 57-2, 57-3, 57-4, 57-5, 57-6, 57-7); and (2) the Declaration of IRS Revenue Officer Adam Morgan, which outlines the nondischargeable tax balances due for each of the tax years at issue as of May 1, 2016, including any statutory accrued interest, but not including any dischargeable penalties, for a total amount sought of $1,065,493.30, plus statutory interest still accruing. (ECF No. 77.)[8]

---

[7] Although defendant now strongly resists the effect of the evidence from, and his conviction in, the criminal case, defendant previously took a very different position. Notably, in a prior request to stay this civil action pending the outcome of his criminal appeal, defendant stated:

> If Defendant loses on appeal, there will be no need for this Court to do anything other than grant summary judgment based on the convictions. Why, then, should this Court be put through the inconvenience of managing and trying a case that could be resolved by way of the pending appeal?

(ECF No. 25 at 7-8.) The court can discern no principled reason for defendant's change in position, other than that the criminal appeal was subsequently not resolved in defendant's favor.

[8] The United States concedes that the judgment should not include penalties. See McKay v.

13

Defendant asserts numerous objections to the United States' evidence, many of which border on the frivolous.

Defendant's argument that the declarations offered by the United States lack personal knowledge is without merit. At the time that Mr. Role executed his declaration attaching the Forms 4340, he was a tax division trial attorney assigned to this case, and in that capacity plainly had custody of the Forms 4340 pertaining to defendant and personal knowledge as to their authenticity. (ECF No. 57, ¶¶ 1-2.) Similarly, Mr. Morgan's declaration makes clear that he is an IRS revenue officer assigned to this case; has custody and/or control of the official IRS records related to this case; and has personally reviewed defendant's IRS tax records to compute the nondischargeable tax balances due for each of the tax years at issue as of May 1, 2016. (ECF No. 77, ¶¶ 1-7.) See United States v. Little, 2005 WL 2334711, at **7-8 (E.D. Cal. Sep. 23, 2005).

Defendant's objection to Mr. Morgan's use of a pseudonym is also not well taken, because IRS agents are frequently permitted to use pseudonyms to avoid potential harassment as long as the agent is a readily identifiable person. See, e.g., Springer v. I.R.S., 1997 WL 732526, at *5 (E.D. Cal. Sep. 12, 1997). Here, Mr. Morgan's declaration expressly acknowledges the use of a pseudonym and provides sufficient information to render Mr. Morgan a readily identifiable person. (ECF No. 77, ¶ 2.)

Furthermore, defendant's hearsay objections are devoid of merit. See Hughes v. United States, 953 F.2d 531, 540 (9th Cir. 1992) (official IRS documents, even if generated by a computer, are admissible as public records under Federal Rule of Evidence 803(8)); U.S. v. Kneapler, 733 F. Supp. 2d 1308, 1315 (S.D. Fl. 2010) (IRS officer who reviewed IRS records is competent to testify regarding the outstanding tax liabilities, because her examination and computations are based on her personal knowledge).

Generally, Forms 4340 "are highly probative and in the absence of contrary evidence, are sufficient to establish a tax assessment was properly made and notice and demand for payment

---

United States, 957 F.2d 689, 693 (9th Cir. 1992) (noting that penalties imposed on unpaid taxes accruing more than 3 years before the filing of the bankruptcy petition are dischargeable even though the taxes were nondischargeable under section 523(a)(1)(C)).

were sent." United States v. Vacante, 717 F. Supp. 2d 992, 1004 (E.D. Cal. 2010). "When supported by a minimal factual foundation, the IRS' assessments for taxes and related penalties are entitled to a presumption of correctness and the burden shifts to the taxpayer to show the assessment is incorrect. If the taxpayer fails to rebut the presumption, the government is entitled to judgment as a matter of law." Id. (internal citations omitted).

Defendant offers several arguments for why the Forms 4340 in this case are nonetheless invalid or unreliable, none of which is persuasive.

Defendant suggests that the Forms 4340 were not executed by an appropriate individual. Defendant's argument in that regard is plainly frivolous. See United States v. Boyce, 148 F. Supp. 2d 1069, 1082 (S.D. Cal. 2001). The Forms 4340 in this case were certified under seal by Debbie Okray, Chief of Accounting Operations for the IRS, by direction of the Secretary of the Treasury. (ECF Nos. 57-1, 57-2, 57-3, 57-4, 57-5, 57-6, 57-7.)

To the extent that defendant argues that the Forms 4340 are unreliable and inadmissible because they were prepared for the purpose of litigation, that argument likewise lacks any merit under the applicable law. See Boyce, 148 F. Supp. 2d at 1082 (citing United States v. Hansen, 7 F.3d 137, 138 (9th Cir. 1993); Hughes, 953 F.2d at 539-40).

Furthermore, contrary to defendant's contention, the United States is not required to provide the underlying source documents to substantiate entries on the Forms 4340 that a notice and demand for payment was sent to defendant, especially given that defendant has presented no specific facts to the contrary. (See ECF Nos. 57-1, 57-2, 57-3, 57-4, 57-5, 57-6, 57-7; ECF No. 77, ¶ 18.) See, also, Hansen, 7 F.3d at 138 ("the IRS properly submitted and relied on Form 4340 to show that notice and demand was sent to the Hansens"). Additionally, although defendant argues that the Forms 4340 lack entries for notices of deficiency, such notices were not required here where the assessments were based on defendant's own tax returns as opposed to IRS deficiency procedures. (ECF No. 28; ECF No. 67-1, Ex. 4 at 31-32; ECF No. 77, ¶ 17.)

Finally, even though defendant complains that the amounts reflected on the Forms 4340 are different from those outlined in the Morgan Declaration, that is to be expected, given that statutory interest continues to accrue on unpaid taxes and the amount due thus changes with the

15

passage of time.  See 26 U.S.C. § 6601.

Defendant's remaining objections to the United States' evidence are so insubstantial as to not warrant further discussion, and are summarily overruled.

In sum, the court finds that summary judgment is also appropriate with respect to the United States' second claim to reduce defendant's tax assessments to judgment, and that the United States is entitled to judgment in the amount requested.

CONCLUSION

Accordingly, for the reasons outlined above, IT IS HEREBY RECOMMENDED that:

1. The United States' renewed motion for summary judgment (ECF No. 76) be GRANTED.

2. Judgment be entered in favor of the United States and against the defendant in the amount of $1,065,493.30, plus any statutory interest accruing after May 1, 2016, until paid in full.

3. The Clerk of Court be directed to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served on all parties and filed with the court within fourteen (14) days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

IT IS SO RECOMMENDED.

Dated:  September 25, 2017

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

16